### SECURITY TRUST CO. *v.* SLOMAN.

1. PLEADING—PARTIES—AMENDMENT—MORTGAGES.

   Where suit by trust company to foreclose mortgage executed to it as trustee to secure bond issue was brought by it in its corporate name, but word "trustee" was omitted, leave to amend in this respect during trial was properly granted under 3 Comp. Laws 1915, § 12478.

2. MORTGAGES—USURY—BOND ISSUE APPROVED BY SECURITIES COMMISSION.

   Under Act No. 335, Pub. Acts 1921, amending 2 Comp. Laws 1915, § 5997, defense of usury is not available in suit to foreclose mortgage executed to secure bond issue approved by securities commission, although discount rate at which bonds were sold, when added to rate of interest provided for therein, exceeded statutory allowance therefor.

3. SAME—ESTOPPEL.

   Where mortgagor offered for sale bonds secured by mortgage at certain price, and signed petition to secure approval thereof by securities commission, and all parties understood that purchasers were "underwriters" guaranteeing sale of bonds to

public, validity of order of commission approving sale may not be attacked by mortgagor or his representative, in suit to foreclose mortgage, for purpose of rendering available defense of usury, on ground that bonds and mortgage constituted loan by purchasers and therefore approval of commission was not necessary under Act No. 220, Pub. Acts 1923, § 4, subd. *g*.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted June 20, 1929. (Docket No. 104, Calendar No. 34,402.) Decided December 3, 1929. Rehearing denied January 24, 1930.

Bill by Security Trust Company, a Michigan corporation, against Pauline H. Sloman, individually and as executrix of the estate of Eugene H. Sloman, deceased, to foreclose a trust mortgage executed by Eugene H. Sloman to it as trustee to secure bond issue. From a decree for plaintiff, defendant appeals. Affirmed.

*Stevenson, Butzel, Eaman & Long* (*Leo W. Kuhn*, of counsel), for plaintiff.

*George E. Brand,* for defendant.

SHARPE, J. Plaintiff seeks foreclosure of a mortgage executed by Eugene H. Sloman on certain realty in Detroit to it as trustee to secure an issue of bonds described therein. It had decree, from which defendant appeals.

1. The bill was filed by plaintiff in its corporate name, but the word "trustee" was omitted. A copy of the trust mortgage was annexed to the bill and made a part thereof. Foreclosure was sought. During the trial, on attention being called to this omission, plaintiff asked leave to amend, which was granted. This was clearly permissible under our statute of amendments (3 Comp. Laws 1915, § 12478).

2. On March 4, 1926, Eugene H. Sloman, now deceased, submitted to the Security Trust Company and Watling, Lerchen & Company an offer in writing to sell to them $650,000, par value, of six per cent. bonds, to be secured by a first mortgage on certain real estate in Detroit. The bonds were to mature in sums of $10,000, $15,000, $20,000, $25,000, and $30,000, the first on October 1, 1926, and the last on April 1, 1941. The offer contained provisions for a sinking fund, for appraisals, abstract, and expenses, and also an undertaking on the part of Mr. Sloman "to secure the approval of the Michigan Securities Commission to said bonds." The last clause therein reads as follows:

"The bonds are offered to you at ninety-two and one-half (92½) and accrued interest, you to take delivery and pay for the same in full when said bonds have been executed and are ready for delivery —but not later than May 1st, 1926."

This offer was accepted in writing. The date of acceptance does not appear. On April 15, 1926, Mr. Sloman executed a temporary bond for the $650,000, the same to be exchangeable for definite bonds, payable as per the terms of his offer. On the same day he executed a mortgage on the real estate to the Security Trust Company, as trustee, to secure the payment of the several bonds above provided for, the form of each being inserted therein. These instruments were dated as of April 1, 1926. There was at that time a mortgage upon the premises. The trustees authenticated the bonds, and delivered them to the purchasers on receipt of the price agreed upon, and, after paying the mortgage and some other claims and expenses, it settled with Mr. Sloman on April 15th by paying him $148,819.41. On the same day, and presumably before such payment was made,

Mr. Sloman signed and verified an application to the Michigan Securities Commission, in which he asked for authority to sell these bonds "under the provisions of Act No. 220, Pub. Acts 1923," stating therein, in answer to question 7, "Purchaser of bonds or notes, if underwritten—Security Trust Company and Watling, Lerchen & Company. Price paid? 92½." To the question, "For what purpose are proceeds of bonds to be sold?" he answered, "To retire $435,000 outstanding first mortgage 6½% bonds and pay off bank loans."

It is the claim of defendant that no interest should have been allowed to plaintiff, for the reason that the discount at which the bonds were sold, when added to the rate of interest provided for therein, exceeded the statutory allowance therefor. Our statute, 2 Comp. Laws 1915, § 5997, fixing the maximum rate of interest which may be stipulated for at 7 per cent., was amended by Act No. 335, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5997), by adding thereto the following proviso:

"*Provided*, That this act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association, or person, the issue and rate of interest of which have been expressly authorized by the Michigan Public Utilities Commission or the Michigan Securities Commission."

The effect of this amendment was considered by this court in the recent case of *Straus* v. *Elless Co.,* 245 Mich. 558. This question was given careful consideration in that case, in which the present counsel for defendant filed a brief as *amicus curiæ.* We have, however, examined the authorities now cited by him, but, upon mature deliberation, adhere to the views there expressed.

It is urged that the bonds and mortgage were

but a security given by Sloman to the trust company and Watling, Lerchen & Company for the loan made by them to him, and therefore not within the provisions of Act No. 220, Pub. Acts 1923.   Section 4 thereof reads as follows:

"Except as hereinafter provided, the provisions of this act shall not apply to any security which at the time of the sale thereof is within any of the following classes of securities:    *    *    *

"(*g*) Any bonds or notes secured by a first mortgage on property within the State of Michigan, when the entire mortgage together with all of the bonds or notes secured thereby is sold or offered for sale or resale to a single purchaser or at a single sale."

The facts before stated disclose the nature of the transaction.   The application was made in compliance with the provision of the sales agreement above referred to.   It was filed with the commission April 19th, and an order made validating the bond issue on April 29th.   The proceedings before the commission were attended to by Watling, Lerchen & Company.   While the application was pending, they wrote the commission as follows:

"We neglected to call attention yesterday during the hearing that the outstanding bonds of the former issue of $450,000 have been called for payment as of May 1, 1926.

"As we are dependent upon the sale of a substantial portion of the new bonds to the old bondholders and should arrange such exchanges before the callable date, we hope that we may receive your approval of the issue at the earliest possible moment."

Had it appeared to the commission from the petition filed that an unconditional sale of the bonds had been made to the purchasers, it is not likely that the order validating the bonds would have been made.   The purchasers were said to be the "under-

writers'' of the bond ·issue. By the use of this term the commission was informed that the purchasers had guaranteed the' sale of the bonds to the public. No other inference can be drawn from the proceedings had than that Mr. Sloman desired the validation of the bonds so that the underwriters might sell them to the public. The letter to the commission, above quoted, clearly stated that it was expected that the then holders of bonds under the old mortgage would accept bonds under the new mortgage in payment thereof. Under the authority granted by the commission, the bonds were placed upon the market for sale, and, as testified to by the trust officer of the ·plaintiff, they are in the hands of ''numerous persons who have bought these bonds. * * * They are pretty widely scattered. I would guess about 200 or 250. That isn't a statement, it's a guess.'' Under these circumstances, Mr. Sloman, if living, would not be permitted to attack the validity of the order made for the reason stated, nor may the defendant ·as his representative do so.

The applicable rule is well stated in 21 C. J. p. 1202:

''Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterward ·assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representations.''

The decree is affirmed, with costs to appellee, including an attorney fee upon the appeal of $500.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred. The late Justice FELLOWS took no part in this decision.